# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

|                                      |     |                                          |
|--------------------------------------|-----|------------------------------------------|
| **GLENN D. BALL,**                   | §   |                                          |
|                                      | §   |                                          |
|                                      | §   |                                          |
| **Plaintiff,**                       | §   |                                          |
|                                      | §   |                                          |
| **vs.**                              | §   | **Civil Action No. 1:06-CV-138-BI**      |
|                                      | §   | **ECF**                                  |
|                                      | §   | **Assigned to the U.S. Magistrate Judge**|
| **MICHAEL J. ASTRUE[1],**            | §   |                                          |
| **Commissioner of Social Security,** | §   |                                          |
|                                      | §   |                                          |
| **Defendant.**                       | §   |                                          |

## MEMORANDUM OPINION AND ORDER

**THIS CASE** is before the court upon Plaintiff's complaint filed October 12, 2006, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief[2] ("Pl. Brief") in support of his complaint on February 9, 2007, Defendant filed a brief on March 5, 2007, and Plaintiff filed his reply on March 14, 2007. The parties consented to having the United States Magistrate Judge conduct all further proceedings in

---

[1]    Michael J. Astrue has been appointed as the new Commissioner of Social Security, effective February 12, 2007, and is therefore substituted as Defendant in this matter for Jo Anne B. Barnhart, per FED. R. CIV. P. 25(d)(1).

[2]    Plaintiff termed his brief a motion for summary judgment with brief in support. However, as the court had already notified the parties, the court finds the interests of both parties and the interests of judicial economy and conservation of judicial resources will be accomplished by considering and briefing Social Security cases brought pursuant to 42 U.S.C. § 405(g) as appeals, rather than addressing them as cross-motions for summary judgment. Therefore, Plaintiff's motion and brief were treated as his brief in accordance with the briefing scheduling order entered by the court.

this case on October 30, 2006 (Doc. 7), and December 11, 2006 (Doc. 14). This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be affirmed and Plaintiff's complaint should be dismissed with prejudice.

## I.  STATEMENT OF THE CASE

Plaintiff filed an application for a period of disability and disability insurance benefits on May 12, 2003, alleging disability beginning December 15, 1999. Tr. 14, 33, 98-100. Plaintiff's application was denied initially and upon reconsideration. Tr. 14, 33, 52-55, 57-61. Plaintiff filed a Request for Hearing by Administrative Law Judge on January 20, 2004, and this case came for hearing before the Administrative Law Judge ("ALJ") on June 7, 2005. Tr. 14, 33, 51, 495-526. Plaintiff, represented by an attorney, testified in his own behalf. Tr. 498-514. Ollie D. Raulston, Jr., M.D., a medical expert ("ME"), and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 514-25. The ALJ issued a decision unfavorable to Plaintiff on June 23, 2005. Tr. 30-43.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He noted that Plaintiff last met the disability insured status requirements on June 30, 2003, and, therefore, must prove that his disability began between December 15, 1999, and June 30, 2003. He found that: Plaintiff had not engaged in substantial gainful activity at any time since December 15, 1999. Tr. 16, 23, 35, 41. Plaintiff has "severe" impairments, including moderate degenerative disc disease in the lumbar spine, bilateral chondromalacia, a fractured right wrist, and osteopenia. *Id*. The ALJ found Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 23, 41. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p.  Tr. 18, 36.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible.  Tr. 20, 24, 38, 42.

The ALJ found that Plaintiff could not return to his past relevant work as a truck driver or technical radio and television industry positions.  Tr. 20, 24, 42.  He noted that Plaintiff was considered a "younger individual" with a high school education, one year of college, and several technical courses.  20 C.F.R. §§ 416.963, 416.964; Tr. 22, 24, 40.

During the critical period of December 15, 1999, through June 30, 2003, the ALJ found that Plaintiff retained the RFC to perform requirements of a modified range of light work activity, limited to jobs that do not require more than occasional stooping, crouching, climbing, or kneeling; that do not require crawling; and that do not require working at unguarded heights.  Tr. 20, 24, 42. Additionally, Plaintiff was restricted to jobs that required him to master duties at the low end of the detailed range.  Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments.  Tr. 22-24, 40-42.  He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of storage facility rental clerk, with 2,300 jobs in Texas and 188,000 jobs nationally; information clerk, with 4,100 jobs in Texas and 160,000 jobs nationally; and furniture rental clerk, with 2,900 jobs in Texas and 212,000 jobs nationally.  *Id*.  The ALJ, therefore,

concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision.  Tr. 23, 25, 41-42.

In his opinion the ALJ noted that on July 29, 2005, Plaintiff requested that the ALJ vacate his decision so that he could consider a treating physician's opinion that had been inadvertently misfiled in another claimant's file.  Tr. 14, 80, 84.   The ALJ indicated that he had issued an order attempting to vacate the decision to do so, but  the Appeals Council had assumed jurisdiction.  Tr. 14, 84.  The Appeals Council, however, remanded the case for the ALJ to consider the additional evidence.  Tr. 86.   Since the Plaintiff's representative submitted the additional evidence, the ALJ found that another hearing was not necessary.  Tr. 15.

After reviewing the record and the new evidence, the ALJ again issued a decision unfavorable to Plaintiff on February 10, 2006.  Tr. 11-25.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 21, 2006.  Tr. 10A.  After granting a 25-day extension, the Appeals Council issued its opinion on July 14, 2006, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request.  Tr. 5-8.  The ALJ's decision, therefore, became the final decision of the Commissioner.

On October 12, 2006, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir.

2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 20-24, 40-42.

## III. DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to find that Plaintiff's severe impairments met or equaled the requirements of Listing 1.04, failed to accept the opinion of the Plaintiff's treating physician over the opinion of the non-examining ME, and failed to find Plaintiff's mental impairment severe. The ultimate issue is whether the ALJ's decision is supported by substantial

evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A.  Whether the ALJ erred in finding that Plaintiff's impairments did not meet or equal in severity Section 1.04 of the Listing of Impairments.**

Plaintiff argues that the ALJ erred in finding at step 3 of the sequential evaluation process that his impairments did not meet or equal in severity any impairment in the Listing of Impairments. He argues that the medical evidence of record demonstrates that his impairments satisfy or are equivalent to the requirements of Section 1.04 of the Listing of Impairments.

In order to obtain a determination of disabled under the Listing of Impairments, an applicant must show that his impairments meet or equal one of the listings in appendix 1 of 20 C.F.R. Part 404. To meet the listing under § 1.04, the Plaintiff must show that he has

> [d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord [along w]ith:
>
> A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."

*See* 20 C.F.R. Part 4, Subpt. P, App. 1, §1.04. Plaintiff specifically argues that he has met the criteria of § 1.04 A and has therefore demonstrated presumptive disability.

The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe impairments meet or equal one or more of the Listings. At step 3 the burden of proof rests with a claimant. Ultimately, the claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a step 3 impairment determination. *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders,* 914 F.2d at 619; 20 C.F.R. § 404.1526(a). If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders,* 914 F.2d at 620. To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ found that Plaintiff's severe impairments during the relevant period included degenerative disc disease, degenerative changes in the knees, osteoporosis and a fractured wrist. Tr. 16. Plaintiff argues that there is substantial evidence in the record demonstrating that he met the remaining criteria of § 1.04 A of the Listing of Impairments prior to the expiration of his insured status.

Plaintiff argues that his back impairment results in the compromise of a nerve root. He argues that the evidence of record demonstrates that there is nerve root compression characterized by neuro-anatomic distribution of pain, limitations of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight-leg testing. *See* 20 C.F.R. Subpt. B, App. 1, § 1.04 A(A).

Dr. Gary Holland indicated in a "to whom it may concern" letter dated March 28, 2000, regarding Plaintiff's application for disability that Plaintiff likely had at least a degree of lumbar disc disease, possibly a herniation, but did not point to any objective diagnostic testing which indicated any herniation at that time. Tr. 437. A CT scan of the lumbar spine without contrast performed on June 30, 2000, indicated "[n]o evidence of focal disc herniations or significant spinal stenosis" at either L4-5 or L5-S1. Tr. 328. A January 18, 2001, MRI of the lumbar spine indicated moderate to severe degeneration of the L4-L5 disc with discogenic sclerosis involving the end plates of L4-L5, a broad based disc bulge, and mild face hypertrophy. Tr. 318, 432. No focal disc herniations were seen on either L4-L5 or L5-S1. *Id*. Dr. Fred Kash noted on January 12, 2001, that upon examination, Plaintiff had 180 degrees of flexion in the back, 10 degrees of extension associated with pain, and pain with lateral bending, and he was able to heel and toe walk. Tr. 322-23. His impression was lumbar radiculopathy, and he scheduled a myelogram based on this impression. Tr. 323.

Dr. S. Daggubati, who conducted an examination on July 2, 2001, indicated Plaintiff's report of pain in the back, right knee joint, and the shoulder blade. Tr. 332. He noted upon examination that Plaintiff showed tenderness with muscle spasm in the back, forward bending was 80 degrees, lateral bending was full, and straight-leg raising was 60 degrees on both sides with knees straight. Tr. 333. He noted that Plaintiff was able to walk with a normal gait and had some difficulty with squatting because of his knee. *Id*. His impression included, in part, low back syndrome due to degenerative arthritis and possible osteopenia. Tr. 334.

Dr. Gunnam Ramachandran, an internal medicine consultative examiner, noted that upon examination, Plaintiff had tenderness in the lumbar area, was able to forward flex and touch his toes fairly well, was able to walk on heels but has some difficulty walking on tiptoes, gait was normal, deep tendon reflexes were equal bilaterally, and there was no deficit in motor or sensory systems.

Tr. 298. His impression was low back pain due to degenerative lumbar disc disease at L4-L5, osteopenia of the lumbar spine, and right knee pain, cause unknown. *Id.*

Plaintiff was examined by Debra M. Monde, D.O., a family practice physician on May 6, 2002. Tr. 336-39. She noted that upon examination, Plaintiff's gait was even, his ability to walk on heels and toes was within normal limits, he was able to do a straight sit up, and straight-leg raising was negative except for back discomfort at 60-70 degrees in supine position and negative with seated distraction. Tr. 338. Her diagnosis included lumbar degenerative disc disease and pain, as well as osteoporosis. *Id.*

Plaintiff was examined after the expiration of his insured status by O. Martin Franklin, D.O., on July 18, 2003. Tr. 364-66. Dr. Franklin noted Plaintiff's report of pain radiating from his back to his tailbone area, across the buttocks, and down the back of the legs. Tr. 364. He noted that upon examination, spasms were noted in his thoracolumbar sacral region, and tenderness was noted as well. Tr. 366. Radicular pain to L4-L5 and S1 bilaterally was noted. *Id.* Dr. Franklin indicated that Plaintiff was unable to heel-to-toe walk secondary to increased pain in the low back and knees. *Id.* He noted straight-leg raising is 80 degrees to the left and 65 degrees to the right, secondary to low back pain. *Id.* Dr. Franklin noted that cervical and thoracic range of motion was normal. *Id.* He noted that Plaintiff had 27 degrees of lumbar flexion, 21 degrees of extension, and side bending at 23 degrees to the right and 33 degrees to the left. *Id.* Dr. Franklin's impression was low back pain, osteoporosis, and radiculitis to the legs. *Id.*

In his October 3, 2003, note regarding an MRI performed on September 30, 2003, Dr. Holland indicated that the MRI showed a left-sided neural foraminal narrowing at L5-S1 along with disc osteophyte formation which Dr. Holland opined "seems to be causing some 'pinching' of the nerve root'" at that level. Tr. 414. The MRI report indicated that "[m]inimal left-sided neural

foraminal narrowing is seen secondary to subforaminal disc osteophyte complex and degenerative facet disease." Tr. 417.

Plaintiff argues that the MRI, which occurred three months after his insured status had expired, demonstrates that he met the second criterion of Listing 1.04 A arguing that "the referenced medical records are material in this case even though they are dated shortly" after Plaintiff's last date insured. Pl. Brief at 6-7. Plaintiff argues that noncontemporaneous medical records are material and can be used to establish disability where they relate back to the relevant time period. *Id.*

This case must be distinguished from a situation where no contemporaneous medical records exist and where there is uncontroverted evidence as to the severity of the claimant's condition before and after the last date of insured status. *See Ivy v. Sullivan,* 898 F.2d 1045, 1046-48 (5th Cir. 1990). In *Ivy* the Fifth Circuit found that an ALJ erred in finding that a claimant had failed to establish the onset of the disabling condition before the last day upon which she met the special earnings requirement of the statute, where contemporaneous medical records were lost but uncontroverted medical evidence and testimony indicated that the claimant's condition was unchanged and the Appeals Council had found that the claimant subsequently met the applicable disability requirements. *Id.*

Clearly, noncontemporaneous medical records are relevant to the determination of whether onset occurred on the date alleged by the claimant, and it may bear upon the severity of the claimant's condition before the expiration of his or her insured status. *Id.* at 1049 (internal citations omitted). However, in this case medical evidence of record during the relevant period indicates that no herniation was present. CT scans and MRIs performed during the time that Plaintiff was insured indicated no evidence of herniation. *See* Tr. 328 ( June 30, 2000, CT scan, 318, 432; January 18, 2001, MRI where no focal disc herniations were seen on either L4-L5 or L5-S1). Dr. Holland indicated in his March 28, 2000, letter that he believed that Plaintiff likely had at least a degree of

lumbar disc disease, possibly a herniation, but did not point to any objective diagnostic testing which indicated any herniation prior to the expiration of Plaintiff's insured status. In order to demonstrate presumptive disability by satisfying the criteria of Listing 1.04 A, Plaintiff must meet each of these criteria prior to the expiration of his insured status. *See generally, Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985). "Any impairment which had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability. *Owens*, 770 F.2d at 1280.

Having carefully considered Plaintiff's contentions and the medical evidence of record, there is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain prior to the expiration of Plaintiff's insured status.

Plaintiff also argues that the medical evidence of record demonstrates that he has "reflex changes, sensory changes, and motor loss," as well as positive straight-leg raising tests, sufficient to meet the requirements of Listing 1.04 A. Plaintiff notes that Dr. Holland reported muscle weakness, numbness, and tingling. He also notes that Dr. Kash reported an absent left deep tendon reflex, that Plaintiff reported numbness in his left anterior thigh, and that he has sensory loss in his right hand and in the S1 dermatones of both feet. Listing 1.04 A(a) requires motor loss (atrophy with associated muscle weakness or muscle weakness accompanied by sensory or reflex loss). *See* 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.04 A(a). Inability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00 E(1).

Section 1.04 A of the Listing of Impairments requires medical evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 1.04 A. Dr. Daggubatti noted that Plaintiff was able to walk with a normal gait and had some difficulty with squatting because of his knee. Tr. 333. Dr.

Ramachandran noted that Plaintiff was able to forward flex and touch his toes fairly well, was able to walk on heels but has some difficulty walking on tiptoes, gait was normal, deep tendon reflexes were equal bilaterally, and there was no deficit in motor or sensory systems. Tr. 298. Dr. Monde noted that upon examination, Plaintiff's gait was even, and his ability to walk on heels and toes was within normal limits. Tr. 338. Dr. Kash noted that the left deep tendon reflex was absent. Tr. 323. Dr. Daggubati noted some mild weakness of the right grip. Tr. 333. Dr. Monde noted that the deep tendon reflexes were equal and symmetric at upper and lower extremities, with no gross sensory or motor loss. Tr. 338. Dr. Daggubati found that straight-leg raising was 60 degrees on both sides with knees straight. Tr. 333. Dr. Monde noted that straight-leg raising was negative except for back discomfort at 60-70 degrees in supine position and negative with seated distraction. Tr. 338. After the expiration of Plaintiff's insured status, Dr. Franklin noted that straight-leg raising was 80 degrees to the left and 65 degrees to the right, secondary to low back pain. Tr. 366.

The record indicates no positive straight-leg raising tests while seated. Section 1.00 D of the Listing of Impairments provides that "[a]lternative testing methods should be used to verify the abnormal findings; e.g., a seated straight-leg raising test in addition to a supine straight-leg raising test." 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00 D. Indeed, this section further provides that examining the spine should include straight-leg raising from both the sitting and supine positions. *Id*. at § 1.00 E(1). Moreover, Plaintiff reported low back pain with the straight-leg raising to Dr. Monde, but the reports of positive straight-leg raising were not below 60 degrees.

The ME testified that Plaintiff did not meet or equal the requirements of a Listing. Tr. 515. He testified that there were no neurological deficits to meet the listing, particularly no reflex changes, sensory changes, inappropriate distribution, or motor weakness. Tr. 517. He testified that he had considered all of Plaintiff's impairments, including his cervical problems, the problems with his knees, and the problems with the joints. *Id*.

Plaintiff bears the burden of proving that his impairment or combination of impairments meets or equals the listings at step 3 of the sequential evaluation process. 20 C.F.R. § 404.1520(d); *Selder*, 914 F.2d at 619 (citing *Sullivan*, 493 U.S. at 521). Plaintiff also argues that his impairment is of sufficient medical severity to constitute medical equivalence. He must provide medical findings that support each of the criteria for the equivalent impairment determination. *Id*. The evidence of record does not include medical findings to support each of the criteria of § 1.04 A of the Listing of Impairments, nor does it contain the type of detailed description of muscle atrophy as described in § 1.00 E. The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in finding that Plaintiff's impairments, singularly and in combination, did not meet or equal in severity any impairment in the Listing of Impairments. Plaintiff failed to carry his burden at step 3 to show that he met or equaled the criteria of the appropriate section of the Listing of Impairments. The court finds that the ALJ did not err in finding that Plaintiff's impairments did not meet or equal in severity § 1.04, or any other section of the Listing of Impairments, and his finding is supported by substantial evidence in the record.

Plaintiff argues that the ALJ erred in relying upon the testimony of the ME who indicated that Plaintiff had osteoporosis rather than osteopoenia. The record indicates that the various examining and treating physicians, as well as Plaintiff, have variously indicated that he has osteoporosis or osteopenia. *See* Tr. 131, 148, 169, 207, 219, 262 (Plaintiff's reports of osteoporosis); 298 (physician report of osteopenia); 331 (x-ray report of osteopenia); 335 (x-ray report of mild osteopenia); 338 (Dr. Monde's diagnosis of osteoporosis); 341 (x-ray report indicating diffuse body osteopenia). Dr. Holland, Plaintiff's treating physician, referred to Plaintiff's osteoporosis. Tr. 424. Dr. Holland notified the agency that Plaintiff was diagnosed with

osteoporosis. Tr. 427. He noted on February 26, 2001, in a progress note that Plaintiff's osteoporosis had been documented with a dexa scan. Tr. 428. A DXA scan performed on November 19, 2004, indicates that Plaintiff had osteopenia. Tr. 461. Dr. Holland indicated that Plaintiff's densities were in the osteopenia range, which is between normal and osteoporosis. Tr. 462. Plaintiff's own testimony indicates that Plaintiff's bone densities had improved from the level of osteoporosis to osteopenia. Therefore, Plaintiff's claim that the ALJ erred by not eliciting additional testimony from the ME to determine "whether this seemingly small difference between the ALJ's diagnosis and that of the medical expert would have significantly affected the ALJ's RFC assessment" is without merit. Pl. Brief at 14. "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). Given that the medical evidence indicates that Plaintiff was diagnosed with both osteoporosis and osteopenia by the various physicians who treated and examined him, given that the ALJ discussed these various opinions, and given that the ALJ concluded that Plaintiff's severe impairments included osteoporosis, the ALJ's reference to osteopenia with regard to the testimony of the ME is, at most, harmless error.

An error is harmless unless there is reason to think that a remand might lead to a different result. *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989). As such, improprieties noted by Plaintiff will constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Plaintiff's allegations do not demonstrate any prejudice from this alleged error. Therefore, this alleged error does not provide the basis for remand.

**B.      Whether the ALJ erred in rejecting the opinion of Plaintiff's treating physician regarding the limitations imposed by his impairments.**

Plaintiff argues that the ALJ erred by failing to give appropriate weight to the opinion of Dr. Holland, his treating physician, regarding the limitations imposed by his impairments. Plaintiff specifically argues that the ALJ erred by rejecting the RFC questionnaire completed by Dr. Holland after the expiration of his insured status and instead by relying upon the opinion of Dr. Raulston, the non-examining ME.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory evidence." *Newton*, 209 F.3d at 456. Moreover, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)). The ALJ was thus not required to give any weight to the opinions of the physicians who indicated that Plaintiff was disabled.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating

specialist." 209 F.3d at 456. Pursuant to Soc. Sec. Ruling 96-2p (July 2, 1996) ("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank*, 326 F.3d at 620.

The ALJ is, however, permitted to "discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d 456. SSR 96-2p provides that a medical source statement from a treating source which is well-supported by medically acceptable evidence and which is not inconsistent with other substantial evidence in the record is entitled to controlling weight. *See* SSR 96-2p. This ruling further explains:

> If any of the [six] factors is not satisfied, a treating source's opinion cannot be entitled to controlling weight. It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

*Id.* The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982)).

In this case the ALJ clearly did not give controlling weight to Dr. Holland's opinion as expressed in the functional capacity assessments which were completed in June 2005. Tr. 474-77. In this questionnaire Dr. Holland indicates that Plaintiff meets the criteria for fibromyalgia. Tr. 474. He indicated that Plaintiff's medical impairments are shown by "disc bulging at L4-L5 on CT scan,

decreased bone density on DEXA scan." *Id*. He indicates that Plaintiff's symptoms include multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, numbness and tingling, anxiety, depression, and chronic fatigue syndrome. *Id*. Dr. Holland opined that emotional factors did not contribute to the severity of Plaintiff's symptoms and functional limitations. Tr. 475. He opined that Plaintiff was capable of low stress jobs. *Id*. He opined that Plaintiff's experiences of pain would frequently be severe enough to interfere with attention and concentration. *Id*. He indicates that Plaintiff's medication, specifically morphine, caused lethargy, dizziness, and constipation and required that Plaintiff use caution when driving. *Id*. Dr. Holland opined that Plaintiff could sit 15 minutes at a time, stand 5 minutes at a time, and sit and stand/walk less than two hours during an eight-hour work day; that Plaintiff would need to walk for three minutes at 20 minute intervals; that Plaintiff would need to shift positions at will; that Plaintiff would need to take unscheduled breaks on a daily basis from five minutes to several hours in duration; and that Plaintiff should elevate his legs 2 feet for 10-25% of an eight-hour work day. Tr. 476. Dr. Holland indicates that Plaintiff could occasionally lift 10 pounds, should rarely lift 20 pounds, and should never lift 50 pounds. Tr. 477. He indicated that Plaintiff should rarely twist, or climb ladders or stairs, and could occasionally stoop and crouch or squat. *Id.* Dr. Holland indicated that Plaintiff should only occasionally look down, turn his head to the left or right, look up, or hold his head in a static position. *Id*. Dr. Holland also indicated that Plaintiff would miss more than four days per month of work. *Id*. The RFC questionnaire was completed on June 22, 2005. Tr. 477. Dr. Holland indicated that the "earliest date [to which] the description of symptoms and limitations on this questionnaire" applied was August 1993. Tr. 477.

In his opinion the ALJ noted that Dr. Holland was a board-certified family physician who had followed Plaintiff since at least February 1992. Tr. 16. He noted that Dr. Holland had not suggested that Plaintiff had fibromyalgia until April 22, 2005, two years after his insured status

elapsed. Tr. 19. He noted that the limitations noted by Dr. Holland were not supported by Dr. Holland's records which pre-dated the expiration of Plaintiff's insured status. *Id*. The ALJ noted that Dr. Holland had not associated the indicated limitations with any specific clinical observation or diagnostic test and also noted that Dr. Holland listed Plaintiff's subjective complaints. *Id*.

Plaintiff argues that Dr. Holland explained that this opinion was based on Plaintiff's impairments, which included fibromyalgia. Plaintiff argues that the ALJ erred by failing to properly evaluate Dr. Holland's opinion regarding the limitations imposed by his impairments using the factors described in 20 C.F.R. § 404.1527(d)(2). He further argues that Dr. Holland is the only treating or examining physician who expressed an opinion regarding the limitations resulting from his impairments.

Dr. Holland's progress notes indicate that Plaintiff was injured in a car accident in December 1999, and his belief that Plaintiff sustained some soft tissue injury and strain which caused pain in his lower back. Tr. 444. An April 6, 2000, note indicates Plaintiff's desire to have his chart noted to reflect that he helped his wife with yard work "just a little bit" on April 5, 2000, but experienced pain thereafter. Tr. 436. Dr. Holland noted that the June 30, 2000, CT scan was basically negative. Tr. 435. Dr. Holland's record indicates that the CT scan showed no evidence of focal disc herniations. Tr. 434. A January 18, 2001, MRI again indicated no evidence of focal disc herniations. Tr. 432. Dr. Holland noted that he discussed the results of this MRI with Plaintiff. Tr. 428. He also noted that Plaintiff was functioning reasonably well with a combination of medications. *Id*. On February 26, 2001, Dr. Holland noted that Plaintiff had osteoporosis documented by DEXA scan, indicating that Plaintiff's lack of activity may be at least partly responsible. *Id*. Dr. Holland noted on January 15, 2002, that Plaintiff reported difficulty lifting his right shoulder above 90 degrees. Tr. 424. A progress note dated August 22, 2002, indicates Plaintiff's complaint of fatigue. Tr. 423.

In his opinion the ALJ extensively discussed Plaintiff's treatment by Dr. Holland, the diagnostic tests and results, and the findings and opinions of the other treating and examining physicians. He noted that Dr. Holland's letters, which opined that Plaintiff was disabled, and his functional capacity assessment questionnaire were not supported by detailed, clinical diagnostic evidence and were inconsistent with evidence in the record. He noted that Dr. Holland did not indicate that Plaintiff may have fibromyalgia until well after the expiration of his insured status and also noted that Dr. Holland's own progress notes from the relevant period did not support the limitations noted in the functional capacity questionnaire. The ALJ appropriately noted that Dr. Holland was a family physician who treated Plaintiff over a lengthy period and compared Dr. Holland's opinion, as expressed in the questionnaire, with his own treatment and progress notes, as well as the opinions and progress notes of other examining physicians. Considering the ALJ's opinion and the record as a whole, the court finds that the ALJ appropriately weighed Dr. Holland's opinion regarding the limitations imposed by Plaintiff's impairments and that the ALJ's determination that such opinion was inconsistent with Dr. Holland's own progress and treatment notes, was unsupported by clinical and diagnostic tests, and was inconsistent with the record as a whole is supported by substantial evidence. While the ALJ did not specify each of the criteria under *Newton*, he performed a detailed analysis in which he appropriately addressed these factors. The court finds that the ALJ did not err in weighing the opinion of Dr. Holland regarding the limitations imposed by Plaintiff's impairments.

Plaintiff further argues that the ALJ was required to recontact Dr. Holland before failing to give his opinion regarding the limitations imposed by his impairments controlling weight. "The ALJ has a duty 'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (quoting *Newton*, 209 F.3d at 458). The

claimant has the burden to prove that he is disabled within the meaning of the Social Security Act. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

This court may not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (citing *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996)). In order to establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Carey*, 230 F.3d at 142 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

Failure to recontact a medical source may constitute reversible error. In *Ripley* the Commissioner's decision was reversed and the case remanded with instructions to obtain a report from a treating physician when the evidentiary record contained no medical source evidence whatsoever regarding the effects of the claimant's impairment on his ability to work. *See Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995). In *Myers v. Apfel* the Commissioner's decision was reversed and remanded where the ALJ had "summarily rejected the opinions of [the claimant's] treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." 238 F.3d 617, 621 (5th Cir. 2001). In this case the ALJ appropriately discussed his reasons for discounting the unsupported opinion of Dr. Holland regarding the limitations imposed by Plaintiff's impairments. Moreover, he discussed other substantial evidence in the record, including the findings of various other examining and treating physicians. The record does not establish that failing to recontact Dr. Holland made the record incomplete or that there was insufficient evidence in the record to make a determination of disability, and it does not establish that the ALJ was required to recontact a medical source. Therefore, the court finds no prejudice in the failure of the ALJ to recontact Dr. Holland. *See Ripley*, 67 F.3d at 557.

**C.**     **Whether the ALJ erred in finding that Plaintiff did not have a "severe" mental impairment.**

Plaintiff argues that the ALJ erred by finding at step 2 that his mental impairment was not "severe." Plaintiff argues that the ALJ failed to appropriately consider the evidence in the record as a whole, indicating that Plaintiff had a mental impairment that had a more-than-minimal effect of his ability to perform work-related activities.

Under the Social Security Regulations, the severity of an impairment or impairments is considered at the second step of the five-step sequential analysis. *See* 20 C.F.R. § 404.1520. A claimant must show that he or she has a severe medical impairment before the claimant can be determined disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The regulations further provide that an impairment must significantly limit the person's ability to do basic work activities in order to be considered severe. 20 C.F.R. § 404.1520(c). Thus,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled.

*Id.*

The Supreme Court held that this "severity regulation" is valid on its face and "is not inconsistent with the statutory definition of disability." *Bowen v. Yuckert,* 482 U.S. 137, 146, 154, 107 S.Ct. 2287, 2293, 2298 (1987).

The Fifth Circuit has considered the severity regulation, both before and after the Supreme Court's decision in *Bowen v. Yuckert.* In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Court approved of an earlier construction of the severity regulation that set this standard for determining whether a claimant's impairment is severe:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Id.* at 1101 (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984). In *Loza v. Apfel* the Court held that the standard set forth in *Stone* remained the correct standard. 219 F.3d at 392. However, the Commissioner may require a claimant to make a *de minimis* showing that his or her impairment is severe enough to interfere with the ability to do work under this standard. *Anthony*, 954 F.2d at 293 n.5.

The Court in *Stone* specifically required that ALJs and Appeals Councils must set forth the correct standard in their decisions by reference to the *Stone* opinion or to another opinion of the same effect or by including an express statement in the decision that the construction given to the severity regulation is the construction given to it in *Stone.* Failure to do so will result in the court's assumption that the ALJ or Appeals Council has applied an incorrect standard. *Stone,* 752 F.2d at 1106. Moreover, the claimant need only make a *de minimis* showing that his impairment is severe enough to interfere with his ability to do work to satisfy this standard. *Anthony*, 954 F.2d at 294.

If the ALJ determines that the claimant has a medically determinable mental impairment, he must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a, 416.920a. He is required to evaluate the degree of functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R. §§ 404.1520a and 416.920a. *Boyd*, 239 F.3d at 705. The ALJ must evaluate the claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "b" criteria. A five-point scale is used to rate the degree of limitation in the first three of those functional areas. 20 C.F.R. § 404.1520a (c)(1)-(4). These four separate areas are deemed essential for work. *Boyd*, 239 F. 3d at 705 (citing 20 C.F.R. § 404.1520a(b)(3)). The written decision of the ALJ must incorporate pertinent findings and conclusions based on the technique and must include a specific finding as to the degree of limitation in each of the functional areas described. 20 C.F.R. §404.1520a(e)(2). The Psychiatric Review

Technique form ("PRTF") represents one way in which such findings may be documented. 20 C.F.R. § 404.1520a(e). After the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the ALJ determines the severity of such impairment(s). 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process. 20 C.F.R. § 404.1520a(c)(1). If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. pt. 404, Subpt. P, App. 1, 12.00-12.09. 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment. *Boyd*, 239 F.3d at 705.

In this case the ALJ found that Plaintiff did not have a "severe" mental impairment. The ALJ found that Plaintiff's impairment did not lead to a restriction in his activities of daily life; he did not experience episodes of decompensation; and he experienced mild limitation in his ability to maintain social functioning and concentration, persistence, and pace. Tr. 23. He also found that Plaintiff's mental impairment did not lead to repeated episodes of decompensation, nor did it prevent Plaintiff from functioning outside of a highly supportive living arrangement, nor did it leave Plaintiff unable to function independently outside of his home. *Id.*

The ALJ indicated that he had investigated the possibility that Plaintiff suffers from a psychological impairment. Tr. 20. He noted that Plaintiff reported that he suffered from minimal situational depression in August 2002, that Dr. Holland had prescribed a trial of Zoloft, that Plaintiff was prescribed anti-anxiety medication occasionally, and that Plaintiff's dentist had wondered if he was depressed. *Id.* The ALJ also discussed Plaintiff's lack of testimony regarding mental problems, that he had not sought psychological counseling during the relevant period, and that Plaintiff was examined by Dr. Alan Trimble, a consultative psychiatric examiner. Tr. 21.

An agency report of contact regarding Plaintiff's depression indicates his report that the depression is situational and his belief that he does not have a mental condition. Tr. 199. Another agency report of contact regarding Plaintiff's possible mental issue indicates Plaintiff's report that the mental issue is situational, that there is no history of treatment for depression, and that he does not feel that depression interferes with his daily activities. Tr. 209. Dr. Monde indicates that a psychiatry consultation may be warranted but that Plaintiff did not feel that he has a psychiatric issue other than appropriate situational depression. Tr. 339.

A progress note from Dr. Holland indicates that Plaintiff's dentist called him with a concern about Plaintiff's mental status and need for pain medication on August 15, 2001. Tr. 426. A progress note from January 15, 2002, indicates that Plaintiff asked Dr. Holland for Zoloft and was given samples. Tr. 424.

Dr. Trimble conducted a psychiatric consultative examination on September 18, 2002. Tr. 343-47. He noted Plaintiff's report of dysphoric mood and sleeping restlessly. Tr. 343. He noted Plaintiff's denial of decreased energy, loss of interest, difficulty concentrating, loss of appetite, inappropriate feelings of worthlessness, guilt, or suicidal ideation. Tr. 344. He noted that Plaintiff was taking no anti-depression medication although he had taken Zoloft for three months at his own request. *Id.* Dr. Trimble noted that Plaintiff was cooperative with no evidence of abnormality in motor activity, mannerisms, or eye contact. Tr. 345. He noted that Plaintiff was spontaneous, coherent, relevant, and logical; cooperated adequately; and showed no abnormalities in speech, with a slightly depressed mood and a slightly histrionic affect. *Id.* Dr. Trimble noted that there was no evidence of thought disturbances, perceptual distortions, delusions, hallucinations, or suicidal ideation; that Plaintiff was oriented to person, place, and time; that he was able to recall numbers and events; and that Plaintiff had an adequate fund of knowledge, with fair insight. *Id.*

Dr. Trimble also noted Plaintiff's reports of his activities of daily living, including doing 50% of the cooking, eating three meals a day, washing dishes, performing housework such as vacuuming and mopping, cleaning the bathroom, performing yard work and mowing, working on vehicles, shopping, driving, reading, watching television, occasionally going to church, going out to eat a few times a month, and restoring old cars for fun. Tr. 346. Dr. Trimble noted that Plaintiff's ability to cook, shop, and perform chores did not seem to be significantly impaired except, from time to time, by chronic pain. *Id.* Dr. Trimble noted that Plaintiff got along with his father at a superficial level and had no difficulty getting along with other family, friends, or people in general, except for his ex-wife. *Id.* Dr. Trimble also noted that Plaintiff has virtually no friends and avoids social contact. Tr. 346. He also noted that Plaintiff's concentration, persistence, and pace were adequate during the examination. *Id.*

Dr. Trimble opined that Plaintiff's diagnosis on Axis[3] I was adjustment disorder with depressed mood, as evidenced by recognizable stressor and accompanying depressed mood. Tr. 346. He opined that Plaintiff had a Global Assessment of Functioning ("GAF")[4] score on Axis V of 70[5]. Tr. 346-47. He also opined that Plaintiff's expected course of functioning over the next 12 months with current treatment was guarded and with no treatment was poor. Tr. 347.

---

[3]       The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30.

[4]       The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV"). This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id.*

[5]       The DSM-IV defines a GAF of 61-70 as some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

Plaintiff argues that there was sufficient evidence to make the ALJ aware of his mental impairment and the ALJ erred by failing to fully investigate such impairment before finding that his symptoms were not fully supported by the evidence. Plaintiff also claims that his pain constitutes a mental impairment.

The claimant has the burden to prove that he is disabled within the meaning of the Social Security Act. *Fraga*, 810 F.2d at 1301. A physical or mental impairment is in turn defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The existence of an impairment does not in itself establish disability; a claimant is disabled only if he or she is "incapable of engaging in any substantial gainful activity." *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986).

The ALJ's duty to investigate "does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Plaintiff did not raise the issue of his mental impairment, and although the ALJ considered a mental impairment, Plaintiff has identified no evidence that he could or would adduce that would cause a different result. The agency ordered a psychiatric consultative examination to further explore any mental impairment, and the ALJ appropriately discussed the findings and opinions of Dr. Trimble regarding Plaintiff's mental impairment, as well as the other evidence in the record regarding Plaintiff's mental impairment. Indeed, the ALJ specifically undertook an investigation to discover the extent to which Plaintiff's mental impairment may have impacted his subjective complaints and symptoms. Evidence of record did not demonstrate that Plaintiff's mental impairment was "severe" within the meaning of the applicable regulations. The ALJ did not err by failing to develop the record as to Plaintiff's mental impairment.

The ALJ's severity determination at step 2 finding that Plaintiff did not have a "severe" mental impairment is supported by substantial evidence in the record. The ALJ appropriately considered and evaluated the evidence regarding Plaintiff's mental impairment in making his severity finding. The court finds that the ALJ did not err in evaluating the severity of Plaintiff's mental impairment, nor did he err by failing to appropriately weigh and consider the evidence in the record concerning this impairment.

Plaintiff argues that the ALJ erred by failing to consider that his pain is a mental impairment that has caused significant mental limitations. He argues that his pain has caused him to have an inability to concentrate, poor memory, irritability, and social withdrawal.

Clearly, pain may be disabling. A claimant's testimony of pain is insufficient to establish disability. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."). The ALJ's assessment of the disabling nature of the claimant's pain is due considerable deference. *Chambliss*, 269 F.3d at 522. For pain to rise to the level of disabling, that pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Id.*; *accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Subjective complaints of pain must be corroborated by objective medical evidence. *Chambliss*, 269 F.3d at 522 (citing *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)). Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *Id.* (citing *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991)).

The ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren*, 925 F.2d at 128 (citation omitted)). The subjective testimony of Plaintiff must be weighed against the objective evidence of medical diagnosis. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987) (citing

*Jones v. Heckler*, 702 F.2d 616, 621 n.4 (5th Cir. 1983). Subjective evidence need not take precedence over objective evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir 1988)). Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence. *Id.* (citing *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)).

In his opinion the ALJ found that Plaintiff "does experience a certain amount of constant pain and it is reasonable to conclude that the pain has compromised his abilities to engage in work-related mental activities." Tr. 21. He found that Plaintiff's pain limited his ability to perform basic work-related mental activities insofar as he was restricted to jobs that required him to master duties at the low end of the detailed range or to jobs that are no more complex than lower-level semi-skilled jobs with a specific vocational preparation rating of three. *Id.* The ALJ noted Plaintiff's complaints of severe pain. Tr. 17. He noted Plaintiff's history of treatment for pain. Tr. 16.

The record demonstrates that the ALJ appropriately considered Plaintiff's complaints of pain and determined that such pain imposed limitations on Plaintiff's ability to perform work-related mental activities. The ALJ's finding regarding the limitations imposed by Plaintiff's pain is supported by substantial evidence in the record. The court finds that the ALJ did not err in evaluating Plaintiff's mental impairment or in evaluating Plaintiff's pain and the limitations imposed therefrom in making his RFC assessment.

**D.      Whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the RFC and the hypothetical questions posed to the VE did not include all of the limitations imposed by his impairments as established by the record. He argues that the ALJ shold have limited him to work which did not require him to work with the public or in close proximity to others,

should have limited him to work which requires only simple, repetitive work, should have incorporated further positional and exertional limitations, and should have incorporated some limitation to reflect his fractured right wrist.

The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Soc. Sec. Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley*, 67 F.3d at 557. In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. Soc. Sec. Ruling 96-7p (July 2, 1996) ("SSR 96-8p"). The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris*, 864 F.2d at 336.

Plaintiff argues that since the ALJ found that his wrist fracture was "severe," he was required to incorporate some limitation based on such into his RFC assessment. The severity determination at step 2 is separate and distinct from the RFC determination. The ALJ incorporated limitations into his RFC assessment, including no working at unprotected heights; no crawling; only occasional crouching, climbing, stooping, and kneeling; and a limitation to jobs at the low end of detailed work. Tr. 24. The ALJ did not indicate, with the exception of the limitation to jobs at the low end of detailed work, which specific impairment was related to each limitation, and he was not required to. The RFC determination is based on all of Plaintiff's impairments as supported by the record. The ALJ is not required, however, to specifically discuss all of the evidence that supports his

decision or that was rejected. *Falco*, 27 F.3d at 163. In his opinion the ALJ rejected Plaintiff's subjective allegations of postural limitations, noting that Plaintiff has furnished several extended supplements prepared on a keyboard. Tr. 17. He also noted Plaintiff's report of his activities, including light household chores. *Id.* The ALJ noted Plaintiff's report to Dr. Trimble of vacuuming, washing dishes, cleaning the bathrooms, cooking, shopping, driving, and restoring old cars. Tr. 20. Even Dr. Holland's questionnaire indicated no limitations on reaching, handling, or fingering. Tr. 477. There is no substantial evidence in the record indicating that Plaintiff was limited because of his wrist fracture beyond the limitations incorporated into the RFC assessment.

Plaintiff also argues that the ALJ should have incorporated other limitations into his RFC assessment, including a limitation to work which did not require contact with the public or close proximity to others and the ability to perform only simple, repetitive work. The court has already found that the ALJ appropriately considered Plaintiff's non-severe mental impairment, and the limitation to jobs at the low end of detailed work is supported by substantial evidence in the record.

Plaintiff argues that the record indicates that he has a "significant limitation in social functioning, poor memory, and difficulty concentrating." Pl. Brief at 20. Dr. Trimble, the psychiatric consultative examiner, did not indicate such limitations. Indeed, he noted that Plaintiff got along well with his family, friends, and people in general, with the exception of Plaintiff's ex-wife. Tr. 346. He also indicated that Plaintiff avoided social contact. *Id.* Plaintiff testified that he had a conflict with a person at work once. There is substantial evidence in the record to support the ALJ's finding that Plaintiff's social functioning and concentration, persistence, and pace were only minimally limited by his impairments. The ALJ need only incorporate those limitations supported by the record into the RFC assessment and his questions to the VE. In addition, upon cross-examination by Plaintiff's attorney, the VE testified that in the jobs identified, a limitation on being able to concentrate for only 20 minutes at a time, would not affect the jobs identified. Tr. 523. The

court finds that the ALJ did not err by failing to incorporate further limitations to reflect Plaintiff's social functioning, memory, and concentration into the RFC determination.

Plaintiff argues that the ALJ should have incorporated additional limitations to include the need to change positions frequently and the ability to stand 5 to 15 minutes at a time, to walk a couple of blocks, and to sit 15 to 30 minutes at a time.

In his opinion the ALJ noted that Plaintiff's subjective allegations of these limitations was inconsistent with his report of his activities. He noted the findings of the various examining physicians. He also noted the opinions of the state agency physicians, who opined that Plaintiff retained the RFC to perform work at the medium exertional level. Tr. 20. The ALJ relied in part upon the opinion of the ME who opined that Plaintiff could perform a range of light work.

A "medical advisor" is a neutral consultant who, at the request of the Social Security Administration, reviews a claimant's medical records, explains or clarifies information reflected therein, and expresses expert opinions as to the nature and severity of impairments and whether such impairments equals the criteria of any impairment in the Listing of Impairments. 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.912(b)(6), 416.927(f)(2)(iii). When a medical professional functions as an expert witness in the course of an evidentiary hearing before an ALJ, Social Security Ruling 96-6p designates the medical professional as a "medical expert." Social Security Ruling 96-6p (July 2, 1996) ("SR 96-6p"). Clearly, an ALJ may rely upon testimony of a medical adviser when evaluating the nature and extent of a claimant's impairments. *Richardson v. Perales,* 402 U.S. 389, 408 (1971). In *Masterson* the Fifth Circuit noted that the ALJ relied upon the testimony of the ME as to the limitations imposed by the claimant's mental impairment. 309 F.3d at 270 (noting that the ME testified that the claimant experienced slight restrictions on daily activities, slight to moderate difficulties in social functioning, and seldom to often-experienced deficiencies of concentration). In *Leggett* the Fifth Circuit noted that the ALJ relied in part upon the testimony of the ME who

opined that, based on the evidence in the record, the claimant was capable of performing sedentary work. 67 F.3d at 565. Applicable authority demonstrates that the testimony of the ME may be used by the ALJ, and the testimony of Dr. Raultson, the ME, was relied upon by the ALJ in determining the limitations imposed by Plaintiff's impairments and the degree to which his subjective complaints were supported by the objective medical evidence of record.

The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ extensively discussed Plaintiff's subjective allegations regarding the limitations imposed by his impairments and his reasons for rejecting those proposed limitations. The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. The court finds that the ALJ did not err in making his RFC assessment, which was supported by substantial evidence in the record.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court finds that the ALJ did not err, that the ALJ's opinion and the RFC determination are supported by substantial evidence in the record, that the Commissioner's decision should be affirmed, and that the Plaintiff's complaint should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED**, that the decision of the Commissioner denying Plaintiff's applications for a period of disability and disability insurance benefits is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's complaint filed October 12, 2006, is **DISMISSED WITH PREJUDICE**.

A judgment in accordance with this decision shall be entered.

**SO ORDERED**.

DATED this 26th day of March, 2008.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**